# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF UTAH

| | |
|---|---|
| **FUMIKO IWASAKI,**<br><br>  Plaintiff,<br><br>vs.<br><br>**BREEZE AVIATION GROUP INC.,** a Delaware Corporation,<br><br>  Defendant. | **MEMORANDUM DECISION & ORDER**<br><br>**Case No. 2:24-cv-00817**<br><br>**District Court Judge Robert J. Shelby**<br><br>**Magistrate Judge Dustin B. Pead** |

## INTRODUCTION

District Judge Robert J. Shelby referred this case to Magistrate Judge Dustin B. Pead under 28 U.S.C. § 636(b)(1)(A).[1] On June 16, 2025, Plaintiff Fumiko Iwaskai ("Plaintiff" or "Iwasaki") noticed the deposition of Breeze Aviation Group's ("Defendant" or "Breeze") Chief Executive Officer, David Neeleman ("Neeleman").[2] Currently pending is Breeze's Motion for Protective Order seeking to prohibit the deposition of Neeleman, and Defendant's Motion for Attorney Fees related to Plaintiff's previously filed Motions to Quash.[3] For the reasons set forth

---

[1] ECF No. 7, Notice of Non-Consent.

[2] ECF No. 26-9, Deposition Notice of David Neeleman.

[3] ECF No. 26; Defendant's Motion for Protective Order, ECF No. 27; Defendant's Motion for Attorney Fees; ECF No. 14; Plaintiff's Motion to Quash Subpoena; ECF No. 15, Plaintiff's Motion to Quash Subpoena.

herein, Defendant's Motion for Protective Order is moot but attorney fees in favor of Breeze are granted and Defendant's Motion for Attorney Fees is denied.

## DISCUSSION

### I.     Breeze's Motion for Protective Order

After Breeze filed its Motion for Protective Order ("Motion"), Iwasaki withdrew Neeleman's deposition notice asserting Breeze's Motion had raised "new information" that made the deposition no longer necessary.[4] Although the parties agree withdrawal of the deposition notice moots the substance of the Motion, the parties disagree as to whether Breeze is entitled to attorney fees.[5]

When a protective order is granted under Federal Rule 26(c)(3), payment of expenses incurred in seeking the protective order is governed by Rule 37.[6] Pursuant to Federal Rule 37(a)(5), attorney fees may be awarded not only when a discovery motion is granted but also where "the disclosure or requested discovery is provided [or a deposition is withdrawn] after the motion was filed."[7] Three exceptions to Rule 37's fee award exist: (i) if the movant "filed the motion before attempting in good faith to obtain the disclosure or discovery without court

---

[4] ECF No. 28, Plaintiff's Opposition in Response to Defendant's Motion for Protective Order.

[5] Both parties agree the attorney fee issue is ripe for decision. *See id.* at 7 ("The only remaining question is thus whether Defendant is entitled to its fees in bringing the Motion under Federal Rule of Civil Procedure 37(c) . . . .").

[6] Fed. R. Civ. P. 26(c)(3); Fed. R. Civ. P. 37(a)(5)(A).

[7] Fed. R. Civ. P. 37(a)(5)(A).

action;" (ii) where "the opposing party's nondisclosure, response, or objection was substantially justified;" *or* (iii) if "other circumstances make an award of expenses unjust."[8]

Applying the rule, Iwasaki does not dispute she withdrew Neeleman's deposition notice after Breeze filed its Motion. Plaintiff asserts, however, that all three exceptions to Rule 37 apply and therefore an award of attorney fees is not appropriate. The court addresses each of Rule 37's exceptions below.

### i. Meet and Confer Obligations

Rule 37 requires parties to make good faith efforts to resolve all discovery disputes before court intervention and states the moving party should not receive fees if it files a motion before attempting to meet and confer in good faith.[9] Similarly, the District of Utah's local rules of practice require parties to "make reasonable efforts to resolve a discovery dispute . . . before seeking court assistance."[10] The local rule further provides:

> At a minimum, those efforts must include a prompt written communication sent to the opposing party: (A) identifying the discovery or disclosure request(s) at issue, the response(s), and specifying why those responses or objections are inadequate, and; (B) requesting to meet and confer either in person or by telephone and including suggested dates and times."[11]

Iwasaki argues Breeze's efforts to resolve the dispute surrounding Neeleman's deposition were insufficient because Defendant failed to disclose relevant information.[12] Under the

---

[8] *Id.* (a)(5)(A)(i-iii) (emphasis added).

[9] Fed. R. Civ. P. 37(a)(5)(A)(i).

[10] DUCivR 37-1(a)(1).

[11] DUCivR 37-1(a)(2)(A)-(B).

[12] ECF No. 28 at 9.

circumstances, the court finds Defendant made reasonable efforts to meet and confer with Iwasaki prior to filing its Motion.

On June 17, 2025, Breeze e-mailed Plaintiff clarifying its objection to Neeleman's deposition on "grounds of relevance, [and] proportionality . . . as more specifically developed under the apex witness doctrine."[13] On June 19, 2025, the parties conducted a video-conference meet and confer.[14] After the conference, Plaintiff e-mailed a summary of the parties' discussion and identified Breeze's position as:

> Neeleman does not have any fingerprints on the case. He has no personal knowledge or information related to the case. Paired with 30(b)(6) depo allowances, it doesn't make sense. There is the apex witness doctrine that articulates these documents into elements based tests for high level officials like Neeleman. Given the FRCP 26 standard and the apex doctrine, he does not need to be deposed or bothered by this.[15]

Plaintiff further identified her position as:

> [B]ased on depositions, Dina [Roberson] was the first official HR rep appointed. We want to ask Neeleman why HR was not a priority at the time of the company's formation and its initial years of growth. Why did the company not have someone in that position earlier to prevent Title VII issues?[16]

Thereafter, each party agreed to "do some more research and approach their respective clients about the arguments" raised.[17] On June 26, 2025, Iwasaki confirmed she would be

---

[13] ECF No. 26-8 at 3, Exhibit H.

[14] *Id.* at 2-3.

[15] *Id.*

[16] *Id.*

[17] *Id.*

moving forward with Neeleman's deposition and on July 23, 2025, Breeze responded by filing its Motion for Protective Order.[18]

The court finds Breeze engaged in reasonable efforts that exceeded the minimal requirements of federal and local rules.[19] Rule 37's meet and confer requirements are limited; while not insignificant, they are not onerous. Here, the parties' respective positions at the meet and confer were outlined in Plaintiff's call summary. As set forth in the summary, Defendant specifically raised the issue of relevance and affirmed Neeleman had no knowledge or information related to Plaintiff's case.[20] These statements are entirely consistent with Neeleman's later Declaration in which he further clarified that he has "no knowledge regarding the creation of the position of Manager of People Services at Breeze."[21] The parties' inability to agree on discovery issues does not make the videoconference unreasonable and the additional, later provided specificity, as set forth in the Motion and Neeleman's Declaration, does not render the meet and confer insufficient. As a result, the first exception to Rule 37's fee award does not apply.

    ii.    **Substantially Justified**

Next, pursuant to Rule 37 the court may not order the payment of fees if the opposing

---

[18] ECF No. 30-1 at 2, Exhibit K; ECF No. 26.

[19] Fed. R. Civ. P. 37; DUCivR 37-1.

[20] ECF No. 26-8 at 2; Exhibit H.

[21] ECF No. 26-4 at ¶ 6, Exhibit D, Declaration of David Neeleman ("I have no knowledge regarding the creation of the position of Manager of People Services at Breeze. Other individuals within People Services at Breeze were responsible for the creation of, and currently oversee, that position.").

party's response or objection was substantially justified.[22] Iwasaki argues her decisions to move forward with Neeleman's deposition and file an opposition to Breeze's (short-form) Motion were substantially justified.[23] According to Plaintiff, it was not until she received Breeze's fully briefed Motion that she learned for the first time: (1) "[o]ther employees were hired as [M]anager[ ] of [P]eople [S]ervices [aka "HR"] prior to Dina Roberson ("Roberson"); and (2) Neeleman "had no knowledge regarding the creation of the position of Manager of People Services at Breeze."[24] Breeze, however, disagrees arguing this information is not "new" and, even assuming it was, it is not relevant to Iwasaki's claims. The court agrees.

First, what Iwasaki characterizes as "new" information was provided in Roberson's June 11, 2025 deposition.[25] Specifically, at her deposition Roberson testified she began her employment with Breeze in March 2023[26] and reported directly to the Vice President of People Services, Mark Tenney ("Tenney").[27] Regarding Breeze's People Services Department and its duties, Roberson further stated:

---

[22] Fed. R. Civ. P. 37(a)(5)(A)(ii).

[23] Before Plaintiff withdrew Neeleman's Notice of Deposition, she filed a response to Breeze's initial short form Motion for Protective Order. It was only after Iwasaki received Defendant's fully briefed Motion that she withdrew Neeleman's deposition notice.

[24] ECF No. 28 at 3.

[25] ECF No. 26-1, Deposition of Dina Roberson.

[26] ECF No. 26-1 at 8:5-12, Deposition of Dina Roberson ("Q: When did you start with Breeze? A: End of March 2022 --- '3 ---'3. 2023.").

[27] *Id.* at 9:23-10:1, Deposition of Dina Roberson ("Q: Who do you report to? A: I report to the VP of people services. Q: And who is that? A: Mark Tenney.").

> Q: So who did HR before you . . .
>
> A: There was a team, but Mark Tenney took most of the duties. And before him, there was someone. And he had assistance. He was---I don't know.
>
> Q: [ ] So Mark Tenney, it was your understanding—he was handling the HR duties before you had started?
>
> A: Yes.[28]

In turn, Iwasaki had been previously informed that Neeleman had no information about Plaintiff's case or about creation of the Manager of People Services position held by Roberson and there was no indication throughout the discovery process, whether through documents or depositions, that Neeleman had such information.[29] Thus, prior to noticing Neeleman's deposition, Iwasaki had information regarding Breeze's HR Department and Neeleman's absence of knowledge.

---

[28] *Id.* at 26:18-27, Deposition of Dina Roberson. Roberson also indicated that Tenney wore "multiple hats" and she was brought in to focus on the HR role. *See id.* at 27:5-28:10 ("Q: But—but did he [Tenney] wear multiple hats along with the HR role? A: He wore multiple hats. Q: Okay. But you were brought in just to focus on the HR? . . . Just so I'm clear, before you were hired, no one really had that singular focus that I had just mentioned---A: Correct."). If anything, Roberson's testimony identifies Tenney, not Neeleman, as an individual having answers regarding Breeze's Human Resources. Breeze designated Tenney as its corporate representation for purposes of Plaintiff's 30(b)(6) deposition. *See* ECF No. 26-6; Exhibit F, Breeze's Designation of Rule 30(b)(6) Witness. Nevertheless, Iwasaki canceled the Rule 30(b)(6) deposition and pursued the deposition of CEO Neeleman. *See* ECF No. 26-10, Exhibit J. Had Iwasaki narrowed her 30(b)(6) topics she could have raised appropriately questions regarding Breeze's creation of an HR Department directly with Tenney.

[29] ECF No. 26-8, Exhibit K; ECF No. 30 at 7, Breeze's Reply in Support of Motion for Protective Order ("*nothing* in discovery indicated Mr. Neeleman had any relevant knowledge" and Plaintiff does not point to anything in support of his knowledge other than his status as CEO of Breeze) (emphasis in original).

Second, and perhaps more importantly, even assuming for purposes of argument that the information provided in Breeze's Motion was "new[,]" Iwasaki fails to establish how such information is relevant to Plaintiff's underlying claims for retaliation and discrimination. Plaintiff states her decision to take Neeleman's deposition was "to determine why the Company had failed to hire someone with a singular focus to investigate and prevent discrimination complaints in Breeze's organization prior to Ms. Roberson's appointment."[30] But Iwasaki alleges she was hired on or around May 22, 2023 and terminated on January 29, 2024.[31] Thus, even assuming Breeze did not create a human resources department in 2021, that fact has nothing to do with whether Breeze violated Plaintiff's rights when it terminated her in 2024. Indeed, there is no dispute that Plaintiff did have a human resources department and an individual in Roberson's role in 2023-2024 when Iwasaki alleges the events at issue occurred. Information regarding people employed in HR prior to Roberson does not affect the reasoning behind Plaintiff's termination which occurred after Roberson was hired.[32] And, the issue of whether Breeze "prioritized" the creation of an HR department or employed someone with a "singular focus" is not probative of what occurred with Iwasaki in 2023-2024 or what ultimately influenced the decisionmakers regarding Plaintiff's termination.[33]

---

[30] ECF No. 28-4 at ¶¶ 7, 9, Exhibit D, Declaration of Galen Shimoda.

[31] ECF No. 1 at ¶¶ 13, 71.

[32] In fact, as set forth in Tenney's Declaration, Defendant had a human resource department back to at least 2019, staffed by an individual who oversaw the same job duties and responsibilities Roberson assumed when she was hired. *See* ECF No. 26-2 at ¶5, Exhibit B, Declaration of Mark Tenney ("Abigal Clark was hired as Breeze's first Manager of People Services on October 15, 2019.").

[33] ECF No. 28-4, Exhibit D, Declaration of Galen Shimoda.

As a result, the court finds Plaintiff was not substantially justified in pursuing Neeleman's deposition or filing her response to the Motion as her reasons for doing so lack a reasonable basis in law and fact.[34]

### iii. Other Circumstances

Pursuant to Rule 37, the court may not order payment of fees if it finds "other circumstances" that make an award of expenses unjust.[35] Here, the court does not find any other circumstances that would make an award of expenses in favor of Breeze unjust.

Accordingly, for the reasons stated, the court concludes Iwasaki's "response or objection" was not substantially justified. As a result, pursuant to Federal Rules of Civil Procedure 26(c)(3) and 37(a)(5)(A), the Court grants Breeze its attorney fees and costs incurred in opposing Neeleman's deposition.

## II. Breeze's Motion for Attorney Fees

On June 2, 2025, Ms. Iwasaki filed a two motions to quash subpoenas.[36] Defendant filed oppositions[37] and, on July 16, 2025, this court issued an order denying Plaintiff's motions.[38] In the order, the court declined Breeze's request for attorney fees finding "substantial justification for Defendant's discovery requests and the absence of any discovery related violations."[39]

---

[34] *See Pierce v. Underwood,* 487 U.S. 552, 565, 108 S. Ct. 2451, 101 L. Ed. 2d 490 (1988).

[35] Fed. R. Civ. P. 37(a)(5)(A)(iii).

[36] ECF No. 14, Plaintiff's Motion to Quash; ECF No. 15, Plaintiff's Motion to Quash.

[37] ECF No. 16, Defendant's Opposition to Motion to Quash Subpoenas; ECF No. 17, Defendant's Opposition to Motion to Quash Subpoenas.

[38] ECF No. 24, Ruling and Order.

[39] Fed. R. Civ. P. 37(a)(5)(B).

Because the court previously ruled on the issue of attorney fees stemming from Plaintiff's motions to quash, the court considers Breeze's pending Motion for Attorney Fees as one for reconsideration.

The only grounds "warranting a motion to reconsider include (1) an intervening change in controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice."[40] Motions for reconsideration should not be used to "revisit issues already addressed or advance arguments that could have been raised in prior briefing."[41]

It is unclear upon which grounds Breeze relies in support of its request for reconsideration and a "mandatory award of fees."[42] Arguably, Defendant's claims could be characterized as suggesting "clear error" based on Breeze's assertion that the motions to quash lack "any legal or factual basis."[43] Yet simply because the court ruled in favor of Defendant, does not mean the court failed to find any potential merit to Iwasaki's claims. To the contrary, the court thoroughly considered the issues of relevance and proportionality and reviewed Iwasaki's attempts to distinguish case law cited by Defendant.[44] Central to Rule 37's substantial justification inquiry is the question of "whether reasonable people could differ" as to the appropriateness of the denied request.[45] Here, that standard is satisfied and the court declines

---

[40] *Servants of Paraclete v. Does,* 204 F.3d 1005, 1012 (10th Cir. 2000).

[41] *Id.*

[42] ECF No. 27 at 2.

[43] *Pierce,* 487 U.S. at 565.

[44] *See generally e.g., Richards v. Convergys Corp.,* 2007 U.S. Dist. LEXIS 9131 (D. Utah Feb. 6, 2007).

[45] *Lester v. City of Lafayette,* 639 Fed. Appx. 538, 543 (10th Cir. 2016); *see also Pierce,* 487 U.S. at 565 (describing motions as justified if there is a "genuine dispute").

Defendant's motion for further reconsideration of its request for attorney fees related to Iwasaki's motions to quash.

Accordingly, Defendant's renewed Motion for Attorney Fees related to Plaintiff's Motions to Quash is denied.[46]

### **ORDER**

For the reasons stated, Defendant's Motion for Protective Order is DENIED IN PART AS MOOT but GRANTED IN PART as to Defendant's request for attorney fees,[47] and Defendant's Motion for Attorney Fees Regarding Plaintiff's Motions to Quash is DENIED.[48]

Dated this 9th day of September 2025.

BY THE COURT:

_____
Dustin B. Pead
U.S. District Magistrate Judge

---

[46] ECF No. 27.

[47] ECF No. 26, Plaintiff's Motion for Protective Order

[48] ECF No. 27, Plaintiff's Motion for Attorney Fees.